UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE GOLDIE,<br><br>Plaintiff,<br><br>v.<br><br>CALIBER HOME LOANS, INC., et al.,<br><br>Defendants. | No. 2:16-cv-00962-KJM-DB<br><br>ORDER |

Defendant Caliber Home Loans, Inc. argues it entered into an enforceable settlement agreement with plaintiff George Goldie that requires Goldie to dismiss this action. Goldie disagrees. For the following reasons, the court GRANTS defendant's motion to enforce the settlement and directs defendant to submit an updated application for attorneys' fees.

I.     FACTUAL AND PROCEDURAL HISTORY

    A.     Goldie's Complaint

Plaintiff George Goldie ("Goldie") alleges the servicer of his mortgage, defendant Caliber Homes Loans, Inc. ("Caliber"), wrongfully sold Goldie's home at a trustee's sale. Compl., ECF No. 1, Ex. A. Goldie sued Caliber in state court for wrongful foreclosure, negligence, negligence in sales price and numerous violations of the California Homeowner Bill

1

of Rights ("HBOR"). *Id.* Caliber removed the case to this court. Notice of Removal, ECF No. 1 (May 5, 2016).

### B. The Parties Continue Court Deadlines Four Times to Negotiate Settlement by Way of Loan Modification

After removal, the parties stipulated to extend Caliber's time to respond to Goldie's complaint five times, representing in the latter four stipulations that they were negotiating a possible settlement "by way of loan modification" and wished to avoid "incurring litigation costs and expenses." ECF No. 8 (May 11, 2016); ECF No. 9 (June 7, 2016); ECF No. 12 (Aug. 3, 2016); ECF No. 15 (Aug. 26, 2016); ECF No. 19 (Oct. 14, 2016). The final stipulation explained that "on September 21, 2016, Caliber informed Plaintiff that the loan modification package was complete and currently under review" as the parties continued negotiating a possible settlement by way of loan modification. ECF No. 19 at 2.

### C. Caliber's Loan Offer and Goldie's Acceptance

On October 21, 2016, a week after the parties represented to the court that Caliber was reviewing Goldie's complete loan modification package, Caliber's counsel sent Goldie's counsel, Russell A. Wyatt, a formal settlement offer. The subject line included the name and number of the instant case, and the body offered Goldie either (1) a trial period plan ("TPP") to secure a loan modification or (2) $25,000 in relocation assistance. Caliber Ex. A, ECF No. 42-1, A-1 – A-2. Caliber explained that if Goldie accepted either offer, Caliber "will require a dismissal of the lawsuit and a release/settlement agreement regarding the claims in the pending lawsuit," which Caliber would draft and send to Goldie. *Id.* at A-2. Caliber noted "the terms contained in the written offer and in the release/settlement agreement shall control over any contrary terms contained in this letter" and that it was reserving all rights and remedies until a fully executed written agreement was finalized. *Id.*

/////
/////
/////

Ten days later, on October 31, 2016, Justin Monaco[1] of Wyatt's office sent an email to Caliber's counsel with a subject line reading, "George Goldie v. Caliber Home Loans, Inc., et al." Caliber Ex. B, ECF No. 42-1 at B-1. The body of the email reads, in full: "Today we reviewed the terms of the trial period plan offered by your client. Mr. Goldie accepts them." *Id.*; *see* Goldie Decl., ECF No. 46-2 ¶ 11 ("I accepted the TPP offer from Caliber on October 31, 2017."[2]). Caliber's counsel responded that evening: "This email confirms your client's acceptance of the trial period plan offered by Caliber. [¶] We will prepare the settlement documents." Caliber Ex. B at B-2.

Two days later, on November 2, 2016, Caliber sent the TPP as proposed to Goldie's counsel. *Id.* at B-3 (email attaching TPP); *see id.* at B-5 – B-8 (proposed TPP requiring Goldie to make three $6,200.16 payments on the first of December 2016, and January and February 2017 to receive a loan modification agreement). Monaco emailed the TPP, executed by Goldie, on November 4, 2016. *Id.* at B-9 (email); *see id.* at B-11 – B-14 (executed TPP).[3] Six days later, Monaco emailed a copy of Goldie's December 1, 2016 TPP payment and asked whether Caliber "rescinded the Trustees [*sic*] Deed Upon Sale yet?" *Id.* at B-15; *see id.* at Ex. B-17 (Goldie's Dec. 1, 2016 payment to Caliber). The trustee executed the rescission on December 15, 2016 and recorded it on December 19, 2016. Caliber RJN Ex. C, ECF No. 44-1 at C-1 – C-2.

With the TPP executed and performance underway, Caliber's counsel began asking Goldie to file a notice of settlement. *See* Caliber Ex. B at B-20 (Dec. 5, 2016 email request); *id.* at B-22 (Dec. 14, 2016 email request). On December 15, 2016, Joseph Chin[4] responded on Wyatt's behalf, explaining Wyatt "would be agreeable to an extension of time for

---

[1] Monaco's role in Wyatt's office is unclear. Neither his emails nor the parties' briefing indicates his position.

[2] Goldie's statement he accepted the TPP on October 31, 2017, rather than October 31, 2016, is a typographical error, confirmed by the fact that Goldie signed his declaration on October 5, 2017.

[3] The TPP agreement was executed by both Goldie and Maria Goldie. Caliber indicates Maria Goldie is Goldie's co-borrower and wife. *See* Reply at 2. She is not, however, a party to this action.

[4] As with Monaco, Chin's role in Wyatt's office is unclear.

your client to file their responsive pleading . . . ." *Id.* at B-23. Caliber's counsel responded that evening: "[because] the parties have reached an agreement to resolve this matter, and your client has signed a loan modification agreement, we think a notice of settlement is more appropriate . . . ." *Id.* at B-24.

Goldie then introduced the possibility of monetary compensation. Specifically, on December 16, 2016, Caliber's counsel claims Wyatt called her and stated that he would file a notice of conditional settlement and that Goldie may have "compensable damages." Mori Decl., ECF No. 42 ¶ 20; *see* Wyatt Decl., ECF No. 46-1 ¶¶ 5-6 (declaring that on an unspecified date after Goldie executed the TPP, Wyatt informed Caliber's counsel that Goldie "would consider settling his action in exchange for monetary compensation"). Caliber's counsel responded in a December 19, 2016 email, expressing her "surprise[] to hear . . . your position that your client may have 'compensable damages,' because that was never part of any previous conversations or documents." Caliber Ex. B-26. She attached Caliber's settlement offer letter and Goldie's acceptance, noting neither provided for payment if Goldie accepted the TPP. *Id.* The email ended, "Please let us know how you want to proceed." *Id.* Wyatt never directly responded. Mori Decl. ¶ 22. But he "belie[ved] that both sides desired to settle this action and the only remaining obstacle to the finalized settlement was the payment of an agreeable amount." Wyatt Decl. ¶ 7.

Nine days later, on December 28, 2016, Caliber's counsel sent Wyatt and Monaco a draft settlement agreement and again asked plaintiff to file a notice of settlement. Caliber Ex. B at B-30. The draft agreement required Caliber to rescind the trustee's sale and modify Goldie's loan in accordance with the TPP, and required Goldie to release Caliber and dismiss the instant action, but included no provision for payment to Goldie. Caliber Ex. B-31–B-42 (draft agreement). Wyatt did not respond. Mori Decl. ¶¶ 22, 38. On January 4, 2017, Caliber's counsel followed up with a revised proposed settlement agreement that required Caliber to dismiss its unlawful detainer action pending against Goldie in state court but included no provision for payment to Goldie, and Caliber again asked why no notice of settlement had been filed. Caliber Ex. B at B-43; *see* Caliber Ex. B-44–B-65 (proposed revised settlement agreement with redline version attached). Wyatt did not respond. Mori Decl. ¶¶ 22, 38, 41.

4

### D. Goldie's Notice of Conditional Settlement, Acceptance of a Modification Agreement and Representations to the Court

On January 6, 2017, two days after receiving Caliber's second proposed settlement agreement, Goldie filed a notice of conditional settlement. ECF No. 21. The notice stated a "Settlement Agreement and Mutual Release ('Settlement Agreement') [] is currently being finalized between the Parties." *Id.* at 2. Goldie further explained, "[t]he effect of the Settlement Agreement is conditional where the satisfaction of each condition is anticipated to occur over the next 21 calendar days from this filing, and with a dismissal to follow not later than 30 days from the date of this Notice." *Id.* That day, the court vacated all deadlines because, "[p]ursuant to the representations of Plaintiff, the court has determined this case has settled." ECF No. 22. The court ordered the parties to file dispositional documents by February 6, 2017. *Id.*

Goldie missed that deadline and instead filed a February 7, 2017 extension to file dispositional documents, representing that "finalization of the Settlement Agreement was conditioned upon full performance of certain negotiated terms which, by their very nature, required the passage of time and subsequent acts by and between the parties which have yet to be fully performed." ECF No. 23. Then, on March 3, 2017, after Goldie made his final TPP payment, Caliber offered him a loan modification. Caliber Ex. F, ECF No. 42-1 at F-1 – F-2. The offer letter explained that Caliber's TPP offer required Goldie to dismiss this suit and sign the settlement agreement, but "[t]o date, even though the borrower accepted the Trial Period Plan and successfully performed, the lawsuit has not been dismissed and the borrowers have not signed the settlement agreement." *Id.* at F-2. The letter advised that to accept the loan modification, Goldie "will need to dismiss the lawsuit and sign the settlement agreement, pursuant to our previous letter regarding the Trial Period Plan." *Id.* Goldie filed his second extension request on March 6, 2017, again noting "full performance of certain negotiated terms" would finalize the parties' agreement. ECF No. 25 at 2. Four days later, on March 10, 2017, Goldie signed the modification, Caliber Ex. H, ECF No. 42-1 at H-1 – H-5, and began submitting payments under that agreement, *see* Caliber Ex. J, ECF No. 42-1 at J-1 – J-6.

/////

On April 6, 2017, with his modification secure, Goldie filed his third request for additional time to file dispositional documents. ECF No. 27. For the first time, Goldie represented that "the details and terms of the settlement negotiations were still on-going" and "[t]he parties are engaged in on-going and continuing efforts to finalize the settlement terms prior to dismissal." *Id.* at 2. Goldie's fourth extension request followed with similar representations. ECF No. 29 (May 8, 2017 request stating, "[t]he Parties have yet to arrive at finalized [*sic*] set of agreeable terms, but continue to work towards that end.").

On May 15, 2017, Wyatt informed Caliber's counsel that he intended to make a monetary settlement demand. Mori Decl. ¶ 42. On May 25, 2017, Wyatt sent Caliber a settlement demand letter on Goldie's behalf, denying the existence of any settlement agreement based on a modification, threatening to file a new suit if Caliber reneged on Goldie's "executed, consummated and ratified" loan modification, and offering to dismiss this action with prejudice for $350,000. Caliber Ex. L, ECF No. 42-1 at L-1 – L-4.

Six days later, on May 31, 2017, Caliber dismissed its unlawful detainer action pending against Goldie in state court. Caliber RJN, ECF No. 44-1 at E-1 – E-3. Wyatt filed Goldie's fifth and final extension request on June 9, 2017, stating he was awaiting Caliber's response to his settlement demand. ECF No. 31 at 2. Caliber responded to Goldie in a June 23, 2017 letter, arguing the parties entered into an enforceable agreement to dismiss this suit in exchange for a loan modification but offering "to resolve this matter on the terms previously agreed – i.e., as set forth in the previously revised Settlement Agreement and Mutual Release – and to also pay $2,000.00 to Plaintiff." Caliber Ex. N, ECF No. 42-1 at N-6 – N-7. Caliber filed an answer, ECF No. 33, then moved to enforce settlement and award sanctions. Mot., ECF No. 41. Goldie opposes, Opp'n, ECF No. 46, and Caliber replied, Reply, ECF No. 47. The court submitted the motion after hearing and resolves it here.

II. <u>LEGAL STANDARD</u>

"[A] district court has the equitable power to enforce summarily an agreement to settle a case pending before it." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). State contract law governs the construction and enforceability of settlement agreements. *Wilcox v. Arpaio*,

753 F.3d 872, 876 (9th Cir. 2014) (citing *Botefur v. City of Eagle Point, Or.*, 7 F.3d 152, 156 (9th Cir. 1993)). Under California law, "[t]he essential elements of a contract are: parties capable of contracting; the parties' consent; a lawful object; and sufficient cause or consideration." *Lopez v. Charles Schwab & Co., Inc.*, 118 Cal. App. 4th 1224, 1230 (2004) (citing Cal. Civil Code § 1550)). An enforceable settlement agreement must be a complete agreement, meaning the parties agreed on all material terms. *Callie*, 829 F.2d at 890-91 (citing *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983) ("Where there has been no meeting of the minds sufficient to form a complete settlement agreement, any partial performance of the settlement agreement must be rescinded and the case restored to the docket for trial.")). Further, both parties must have agreed to the settlement terms or authorized their respective counsel to settle the dispute. *Marks-Foreman v. Reporter Pub. Co.*, 12 F. Supp. 2d 1089, 1092 (S.D. Cal. 1998) (citing *Harrop v. W. Airlines, Inc.*, 550 F.2d 1143, 1145 (9th Cir. 1977)).

When material facts are disputed, such as whether an attorney acted without authority in settling a matter or where the material facts concerning the agreement's existence or terms are in dispute, the court must conduct an evidentiary hearing to resolve the dispute. *Callie*, 829 F.2d at 890-91; *Anand v. Cal. Dep't of Developmental Servs.*, 626 F. Supp. 2d 1061, 1067 (E.D. Cal. 2009) (citations omitted). At hearing on this motion, the court offered to schedule and conduct an evidentiary hearing, but the parties declined the offer and have not since requested one. The issue is waived. *See Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994), *as amended* (Nov. 22, 1994).

III. DISCUSSION

Having thoroughly reviewing the record, the court concludes the parties entered into an enforceable agreement to settle this case "by way of loan modification." Goldie's opposition misrepresents the record and offers only implausible explanations for the parties' negotiations and conduct. The court analyzes the formation and enforceability of the contract as well as Goldie's arguments below and GRANTS Caliber's motion.

/////

/////

7

A. The Parties Entered into a Complete and Enforceable Agreement to Settle this Case through a Loan Modification

To determine whether the parties reached an enforceable settlement agreement, the court applies an objective standard that asks "what the [parties'] outward manifestations of consent would lead a reasonable person to believe." *Meyer v. Benko*, 55 Cal. App. 3d 937, 942-43 (Ct. App. 1976). As noted, an agreement supported by mutual consent is complete only if the parties agree on all material terms. *Callie*, 829 F.2d at 891. Further, an agreement that is written but not signed or never reduced to writing at all is enforceable only if both parties intended to be bound in the absence of a fully executed written agreement. *See Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM JCX, 2012 WL 10274678, at *9 (C.D. Cal. Nov. 13, 2012) (citations omitted).

### 1. Mutual Consent

Under an objective analysis, the parties mutually agreed to settle this case through a loan modification. Caliber's October 21, 2016 letter was the culmination of the parties' settlement discussions and manifested Caliber's intent to provide either (1) a TPP, Goldie's completion of which would lead to a modification, or (2) $25,000 in a relocation assistance payment, in return for Goldie's dismissal of this suit and release of his claims therein, to be embodied in a written agreement. Caliber Ex. A at A-1 – A-2. Thus, "all of the terms [were] definitely understood," and acceptance would "ordinarily result in a binding contract" despite the need to reduce the agreement to writing. *See* 1 Witkin, Summary 11th Contracts § 133 (2018); *Harris v. Rudin, Richman & Appel*, 74 Cal. App. 4th 299, 307 (1999). By accepting the TPP, Goldie agreed to the "dismissal" and "release" conditions on which the TPP offer was expressly conditioned. *See* Caliber Ex. A at A-1; Caliber Ex. B at B-1; Goldie Decl. ¶ 11; *see also Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998) ("The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe.").

Goldie's post-acceptance acts confirm his consent: When Caliber stated it would "prepare the settlement documents" in response to Goldie's acceptance of the TPP, Goldie made

no protest but instead signed the TPP and began making payments under it. *See* Caliber Exs. at B-2, B-9 – B-17; *see also* Cal. Civ. Code § 1584 ("Performance of the conditions of a proposal, or the acceptance of the consideration offered with a proposal, is an acceptance of the proposal."); Cal. Civ. Code § 1589 ("A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting."). Goldie reaffirmed his assent to the parties' bargain when he accepted Caliber's March 3, 2017 loan modification offer, which reiterated that the TPP was conditioned on settlement and that acceptance of the modification offer would require Goldie "to dismiss the lawsuit and sign the settlement agreement . . . ." *See* Caliber Ex. F at F-2. Goldie, again, did not protest or demand additional terms, but instead signed the modification offer and began submitting payments. *See* Caliber Exs. H at H-5, J at J-1 – J-6. Thus, the evidence indicates the parties mutually agreed to settlement by way of loan modification.

Goldie's arguments to the contrary are unpersuasive. First, Goldie argues, without support and despite all evidence to the contrary, that the parties' modification and settlement discussions "were wholly independent" negotiations, that he only considered settling this case "after the TPP was entered into" and that the parties' subsequent settlement discussions always contemplated payment to Goldie. *Id.* at 3, 5. He later contradicts this timeline, arguing the "loan modification and settlement negotiations were being discussed contemporaneously, [but] one was not the cause of the other." *Id*. at 10. Regardless, this argument is wholly inconsistent with Goldie's multiple representations to the court, which include representations that he (1) provided Caliber with financial information to consider for a possible modification, ECF No. 9, (2) later provided Caliber with additional requested information, ECF Nos. 12, 15, and (3) was awaiting Caliber's review of his complete loan modification package, ECF No. 19, all as part of "active, detailed, and good-faith discussions concerning a possible settlement by way of loan modification," ECF Nos. 12, 15. In light of these representations, it is unclear how exactly the modification and settlement negotiations were separate. Even assuming Goldie believed them to be separate, there is no indication Caliber knew or should have known of Goldie's belief.

/////

9

Moreover, had the parties agreed to but not settled on payment to Goldie as a settlement term, there would be no contract, but that is not the case here. *See Weddington Productions, Inc.*, 60 Cal. App. 4th at 812 ("'[I]f an essential element is reserved for the future agreement of both parties, as a general rule the promise can give rise to no legal obligation until such future agreement.'") (citation and internal quotation marks omitted). Goldie raised the compensation issue for the first time in December 2016. Opp'n at 5; *see* Wyatt Decl. ¶ 6; Mori Decl. ¶ 20. At that point, the parties had already begun performing under their agreement to settle this case by way of a loan modification and monetary compensation had not been "the subject of debate and discussion during the course of the parties' negotiations," and thus was not a material term to the parties' agreement. *See Inamed Corp. v. Kuzmak*, 275 F. Supp. 2d 1100, 1122 (C.D. Cal. 2002), *aff'd*, 64 F. App'x 241 (Fed. Cir. 2003). After Caliber rejected Goldie's attempts to introduce a compensation term, Goldie did not raise issue again until after he received the modification agreement. *See* Caliber Ex. B at B-26 (rejecting Goldie's suggestion he may be entitled to monetary compensation because it "was never part of any previous conversations or documents"); *see also* Mori Decl. ¶ 22 (noting Goldie's counsel never responded to Caliber's email rejecting Goldie's claim he may be entitled to damages). Put differently, construing the evidence in a light most favorable to Goldie, Goldie raised the issue of compensation once well after the parties began performing, Caliber unequivocally rejected it, and he raised it again only after he received every benefit of the parties' bargain. The law does not reward Goldie for silently reserving an issue he now claims was material to his assent. *See Inamed Corp.*, 275 F. Supp. 2d at 1122 ("Where parties agree to the material terms of a contract, they cannot avoid the formation of a valid and binding agreement by silently reserving an issue, and later claiming that it was material to their willingness to enter into a contract.")

Finally, the court rejects Goldie's contention he could not have agreed to settle this case because the "four corners" of the TPP and modification agreements do not require dismissal. Opp'n at 9. Under this theory, because Goldie only wished to be bound by the four corners of those documents, he silently disregarded Caliber's use of "unilaterally inserted Settlement language," which he characterizes as "'pork' to the offered TPP." Opp'n at 10; *see id.* at 11

("The mere fact that counsel for Defendant sends her own letter with words of settlement and dismissal to a TPP contract that was prepared and sent by Defendant themselves [*sic*] to Plaintiff does not automatically make Defendant's counsel's desired terms a part of the TPP contract itself."). Notably, Goldie does not deny the TPP and modification were offered as part and parcel of Caliber's settlement offer, and he provides no authority that permits, much less requires, this court to disregard those letters. To the contrary, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642; *see Pac. Employers Ins. Co. v. City of Berkeley*, 158 Cal. App. 3d 145, 150 (Ct. App. 1984) (noting § 1642 "has been broadened by judicial construction . . . [to] appl[y] to several writings, even though they are not 'contracts,' for example"). Had Goldie explained to Caliber that he accepted the TPP but rejected the settlement "pork," his conditional acceptance would have operated as a rejection of Caliber's offer and a counteroffer of his own. *See* 1 Witkin, Summary 11th Contracts § 185 (2018). But Goldie instead apparently proceeded on his subjective, unexpressed belief that he could accept the TPP but silently reject the settlement on which it was conditioned. His silent intent is irrelevant to the parties' objective manifestation of intent to contract.

          2.        <u>Complete Agreement</u>

The agreement is also complete, as it contains all material terms and the court has enough information to determine the scope of the parties' respective duties and assess damages in the event of a breach. *See Callie*, 829 F.2d at 890-91; *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1138 (9th Cir. 2002); *Inamed*, 275 F. Supp. 2d at 1120–21 (collecting California cases). Caliber was required to provide Goldie with a TPP that, if completed, would lead to a loan modification. Caliber would breach the agreement if, for example, it refused Goldie's TPP payments, refused to rescind its trustee sale, or proceeded with its unlawful detainer action against Goldie. *See* 23 Williston on Contracts § 63:26 (4th ed.) ("To the extent that a contracting party impliedly obligates itself to cooperate in the performance of its contract, the law will not permit it to take advantage of an obstacle to performance that it had created or that lies within its power to remove.") (footnote omitted). In exchange for his TPP and eventual permanent modification,

Goldie was required to dismiss this case and release all claims therein. His refusal to do so constitutes breach and entitles Caliber to relief. *See* 1 Witkin, Summary 11th Contracts § 874 (2018) ("The unjustified failure to perform a material promise or covenant, where the contract is entire, is a breach."). Accordingly, the agreement is complete.

### 3. Consideration

Consideration, a necessary element of every contract, is satisfied when a party (1) confers or agrees to confer a benefit on a party not entitled to that benefit, or (2) suffers or agrees to suffer a prejudice that a party is not legally bound to suffer. Cal. Civ. Code § 1605; *see* 1 Witkin, Summary 11th Contracts § 202 (2018) ("Consideration may be an act, forbearance, change in legal relations, or a promise."). Goldie unpersuasively argues that Caliber unilaterally offered him a TPP because it was legally obligated to do so, not as part of a settlement, and that the TPP discussions took place between counsel as "conduit[s] to communicate the information – nothing more." Opp'n at 7; *see id.* at 8 (arguing Caliber's "remedial measures were . . . in, and for, the their [*sic*] own pecuniary and legal interests"). Goldie thus appears to argue that Caliber's performance of its preexisting duty or mitigation of damages cannot constitute consideration here. *See id.* at 8, 12. But Goldie misunderstands consideration and preexisting duties. His belief that he has Caliber "dead-to-rights" on HBOR violations and that Caliber would suffer "an inevitable and substantial loss at trial" does not establish his entitlement to relief in this court: he must actually prove Caliber violated the law, a burden he has not met. *See* Opp'n at 7, 13. Through settlement, Goldie partially secured the object of this litigation without its expense and risks. *See* Opp'n at 8 (noting Caliber's "remedial measures" included a TPP, rescission of trustee's sale, dismissal of state court unlawful detainer action and permanent modification agreement); *see also* Compl. at 33 (complaint requesting "[t]hat the March 2, 2016 trustee's sale be set aside and title restored to [Goldie]" and compensatory damages for loss in equity). The benefits he secured qualify as consideration. *Cf. West v. Superior Court*, 27 Cal. App. 4th 1625, 1635 (1994) (noting settlement for waiver of costs is legal consideration in assessment of good faith settlement for joint tortfeasors); *see also* ECF Nos. 9, 12, 15, 19 (Goldie's representations to court that parties

/////

12

were pursuing settlement by way of loan modification to avoid "incurring litigation costs and expenses"). The parties' settlement agreement is thus supported by consideration.

### 4. Absence of a Signed Written Settlement Agreement

That the parties did not execute a final formal written settlement agreement does not preclude enforcement of their initial agreement to settle this matter by way of a loan modification. When an initial offer is not intended to be binding until a formal writing is executed, there is no contract until that formal writing is executed. *Harris*, 74 Cal. App. 4th at 307 (citing *Banner Entm't, Inc. v. Superior Court*, 62 Cal. App. 4th 348, 358 (1998)). But where the offer demonstrates only the intent to reduce the agreement to a more formal writing, "the failure to follow it with a more formal writing does not negate the existence of the prior contract." *Id.* (citing *Smissaert v. Chiodo*, 163 Cal. App. 2d 827, 831 (1958)). A conclusion that the parties intended a formalized writing be a condition precedent to settlement is "not favored and contractual provisions will not be so construed in the absence of language plainly requiring such a construction." *See In re Marriage of Hasso*, 229 Cal. App. 3d 1174, 1181 (1991). Whether the parties intended the agreement to be immediately effective depends on the circumstances of the case. *Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 314 (9th Cir. 1996) (citation omitted); *First Nat. Mortg. Co. v. Fed. Realty Inv. Tr.*, 631 F.3d 1058, 1063, 1065-66 (9th Cir. 2011).

The circumstances of this case indicate the parties intended their agreement to become effective immediately, but memorialized in a later writing. As noted, Caliber's October 2016 offer letter contained all essential terms of the parties' agreement: a TPP to become a modification in exchange for dismissal and release of the claims in this suit. The parties clearly understood and began acting under the terms of that agreement, with Goldie making TPP payments to Caliber and Caliber unwinding its trustee's sale, among other acts. *See Aeronautics Corp. v. Grand Cent. Aircraft Co.*, 155 Cal. App. 2d 69, 81-82 (1957); *Khajavi v. Feather River Anesthesia Med. Grp.*, 84 Cal. App. 4th 32, 62 (2000); *see also* ECF Nos. 23, 25, 27 (Goldie's requests for extension explaining parties were performing settlement agreement's "negotiated terms"). Caliber's TPP and permanent modification offers state that "the terms contained in the written [TPP and modification] offer[s] and in the release/settlement agreement shall control over

any contrary terms contained in this letter," *see* Exs. A-2 & F-2, and the parties agreed that Goldie would perform by signing a settlement agreement. But the parties never stated that they intended to be bound only upon Goldie's execution of said agreement. To the contrary, Caliber fully performed because it understood the parties were both bound and Goldie's conduct was in accord with that understanding. *See First Nat. Mortg. Co.*, 631 F.3d at 1065-66 (parties' Final Approval noting stated "terms are hereby accepted by the parties subject only to approval of the terms and conditions of a formal agreement" was an existing, enforceable contract under the circumstances, even though the parties never reached a formal agreement). In short, the parties entered into a binding agreement that did not require a later writing to require their performance here.

### 5. Goldie's Representations to the Court

Finally, the court finds that several of Goldie's filings appear to be deliberately misleading, and those filings detract from Goldie's arguments opposing the instant motion. If Goldie never intended to settle this case through a loan modification, then he misled both the court and Caliber by filing multiple stipulations explaining he contemplated precisely such a settlement. *See* ECF Nos. 9, 12, 15, 19. Goldie's later notice of settlement and requested extensions to file dispositional documents are even more troubling. Those documents, in light of the record before the court, evidence Goldie's intent to string Caliber along until he obtained a finalized loan modification and, only then, reveal his true intent. *See* ECF Nos. 21, 23, 25, 27, 29. Indeed, rather than respond to Caliber's rejection of his December 2016 reference to "compensable damages," *see* Caliber Ex. B at B-26, or Caliber's two proposed written settlement agreements, neither of which included a payment provision, *see id. at* B-31–B-42 &B-44–B-65, Goldie filed a notice of conditional settlement and several extension requests stating the parties' "Settlement Agreement and Mutual Release ('Settlement Agreement') [] is currently being finalized between the Parties" and awaited only satisfaction of the Agreement's conditions. ECF Nos. 21, 23, 25. Goldie thus signaled he had received the proposed agreement and would dismiss this case when the parties' negotiated obligations were fully performed: when his modification was secure. His stance changed swiftly once he obtained his modification. Only then did he

announce to the court that "the details and terms of the settlement negotiations were still ongoing" and informed Caliber he would dismiss this case for $350,000. ECF No. 27 at 2; Caliber Ex. L; *see, e.g.*, Wyatt Decl. ¶ 8 (arguing without support that notice of conditional settlement was "expressly conditioned and qualified by the satisfaction of the payment of a monetary sum from Defendant to Payment"). Goldie's misrepresentations compromise the dignity of these proceedings by "playing fast and loose with the court[]," *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 1000 (9th Cir. 2012), and further undermine his purported view of the parties' agreement in addition to ample evidence to the contrary.

      B.     Authority

Because a settlement agreement is enforceable only if both parties agreed to the settlement terms or authorized their respective counsel to settle the dispute, the court considers whether Goldie authorized his counsel to accept the settlement by way of loan modification here. *See Marks-Foreman v. Reporter Pub. Co.*, 12 F. Supp. 2d at 1092 (citing *Harrop*, 550 F.2d at 1145). This court has previously determined that state law governs whether an attorney was authorized to bind a client to a settlement agreement, and California courts apply general agency rules to the attorney-client relationship. *See AT&T Mobility LLC v. Yeager*, No. 2:13-CV-0007-KJM-DAD, 2014 WL 6633374, at *4 (E.D. Cal. Nov. 21, 2014). Under these rules, an attorney does not have implied authority to settle a case through his or her representative role in pending litigation. *Blanton v. Womancare, Inc.*, 38 Cal. 3d 396, 404 (1985). Rather, the client's "specific authorization" is required. *Bice v. Stevens*, 160 Cal. App. 2d 222, 231-32 (Cal. Ct. App. 1958). A client may, however, bind himself by ratifying the unauthorized acts of his attorney. *Blanton*, 38 Cal. 3d at 408 (citation omitted). Put differently, a principal may not both receive the advantages of an agreement and escape its burdens by later repudiation: "it would be unfair to allow him both to have his cake and eat it too." *Alvarado Cmty. Hosp. v. Superior Court*, 173 Cal. App. 3d 476, 481 (1985). Because Goldie is the one attacking the settlement, he bears the burden of demonstrating his attorney acted without authority. *See, e.g., Yeager*, 2014 WL 6633374, at *5; *Anand*, 626 F. Supp. 2d at 1067-68 (citing *Callen v. Pennsylvania R.R. Co.*, 332 U.S. 625 (1948)).

Here, it is unclear whether Goldie disputes his counsel's authority to enter into the settlement agreement on his behalf. Goldie expressly acknowledges that he accepted the TPP in October 2016. *See* Goldie Decl. ¶ 11 ("I accepted the TPP offer from Caliber on October 31, 201[6]."[5]). It follows, then, that he authorized his counsel to accept the TPP on his behalf, or now ratifies that act. *See* Caliber Ex. B-1 (Oct. 31, 2016 email from Monaco accepting TPP offer). But Goldie specifically denies he agreed to settle this case by accepting the TPP, noting, "[n]othing in the TPP agreement itself required me to dismiss my lawsuit against [Caliber]." Goldie Decl. ¶ 11. He further declares he first "authorized" his attorney to pursue settlement only after he accepted the TPP offer and made his first payment in December 2016, that he intended to settle in return for "compensation," and that he would not dismiss this case for a "modification alone" because Caliber "was already obligated and under a duty to consider and evaluate" his modification application. *Id.* ¶¶ 13-16.

Goldie's omissions are as telling as are his affirmative representations. He does not address, much less disclaim, his counsel's numerous representations to the court that the parties were pursing settlement by way of a loan modification. Nor does he deny knowledge that Caliber's TPP and modification offers expressly required dismissal and release of this suit, instead noting only that the TPP "itself" contained no such provision. *See id.* ¶ 11. Indeed, Goldie's representations are in lockstep with his counsel's briefing on his behalf: it is their unified position that Goldie was entitled to accept the TPP and modification while silently believing Goldie need not provide anything in return. Accordingly, the record before the court does not indicate that Wyatt lacked authority to settle this case; it indicates either that Goldie authorized Wyatt to mislead Caliber or that Wyatt misadvised Goldie on the consequences of his actions. Either way, the court is satisfied that Goldie authorized acceptance of the TPP and modification, both expressly conditioned on settlement, and he therefore authorized settlement. *Cf. Ellerd v. Cty. of Los Angeles*, 273 F. App'x 669, 670 (9th Cir. 2008) (affirming enforcement of settlement agreement where evidence permitted inference that plaintiff's counsel had express authority to

---

[5] As noted in footnote 3, Goldie's reference to 2017 appears to be a typographical error.

16

settle case on plaintiff's behalf and where plaintiff's declaration stating that she did not agree to settlement "[c]onspicuously" omitted "any statement to the effect that her lawyer was not authorized to act on her behalf").

Moreover, even if Goldie was unaware that Caliber's TPP offer was part and parcel of a settlement agreement when he accepted the TPP, because Caliber has moved to enforce the parties' settlement agreement and Goldie has submitted a declaration opposing that motion, Goldie cannot now plausibly disclaim knowledge of the "purported" settlement agreement. Nonetheless, Goldie wishes to proceed with his suit against Caliber without returning or offering to return the benefits Caliber conferred to him under the settlement agreement. In other words, Goldie has ratified his counsel's acts by seeking "both to have his cake and eat it too." *See Alvarado Cmty. Hosp.*, 173 Cal. App. 3d at 481, 484 (noting a party cannot "both to accept the benefits and also repudiate the transaction" but granting plaintiff an opportunity to refund the money she obtained as a result of her counsel's unauthorized act "as a condition of her pursuing her action against [defendant]"). Goldie cannot disclaim his counsel's authority to enter into the settlement agreement, retain every benefit of the parties' agreement, but refuse to abide by that agreement and proceed with this suit. *See Navrides v. Zurich Ins. Co.*, 5 Cal. 3d 698, 704 (1971) (observing "the elementary rule of agency law that a principal is not allowed to ratify the unauthorized acts of an agent to the extent that they are beneficial, and disavow them to the extent that they are damaging."); *Blanton*, 38 Cal. 3d at 408 (finding party did not ratify counsel's act where she "immediately" fired her attorney and hired new counsel to set aside previous attorney's act); Cal. Civ. Code § 2311 ("Ratification of part of an indivisible transaction is a ratification of the whole."). Accordingly, to the extent Goldie contests his counsel's authority to accept Caliber's settlement offer, Goldie has ratified that act.

IV. SANCTIONS

Caliber requests sanctions of $24,080 against Goldie and his counsel for the fees and costs it expected to incur in bringing this motion. Mot. at 24-26 (citing counsels' 56 hours preparing the motion and anticipated 30 hours reviewing the opposition and preparing the reply).

Caliber moves under both 28 U.S.C. § 1927,[6] which is aimed at penalizing an attorney's conduct that unreasonably and vexatiously multiplies the proceedings, and under the court's inherent power. *Id.*

Within seven days of this order, Caliber shall submit an updated application for attorneys' fees, reflecting the time actually spent reviewing Goldie's opposition and preparing Caliber's reply. Goldie may file a response, if any, seven days thereafter. After resolving the motion for sanctions, the court will enter dismissal with prejudice.

V. <u>CONCLUSION</u>

As explained above, the court GRANTS Caliber's motion to enforce settlement and DEFERS ruling on Caliber's motion for an award of sanctions, subject to Caliber's submission of an updated application for attorneys' fees.

This order GRANTS in part and DEFERS ruling in part as to ECF No. 41.

IT IS SO ORDERED.

DATED: September 27, 2018.

_____
UNITED STATES DISTRICT JUDGE

---

[6] Section 1927 provides, "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.